IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREGORY HEARN,** *et ux.* | : | CIVIL ACTION |
| v. | : | NO.   02-CV-3525 |
| **BRIAN FUSS,** *et al.* | : | |

**DEFENDANTS' FIRST AMENDED PRETRIAL MEMORANDUM**

**I.    NATURE OF ACTION AND JURISDICTION**

This is a 42 U.S.C. §1983 civil rights matter. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343.

**II.   FACTS**

Police Officer Fuss and his partner responded to a radio call "person firing a gun". On their arrival they spoke with Joseph Lagana who advised that Gregory Hearn had been on his porch firing a gun in celebration of a Philadelphia 76er's playoff victory. Lagana directed Officer Fuss to plaintiff's home. Emma DiBona also directed Officer Fuss to plaintiff's home. Officer Fuss went onto plaintiff's porch where he met with Gregory Hearn. Hearn denied firing a gun and stated it was only fireworks. Officer Fuss pointed out a shell casing lying on Hearn's porch. Hearn leaped for the shell casing as Officer Fuss attempted to pick it up. Hearn and Officer Fuss collided, fell to the porch floor and struggled briefly. Hearn was able to grab the casing and toss it into his house.

**III.  WITNESSES**

   **A.    Liability**

       1.   Officer Brian Fuss
            c/o Philadelphia Police Department
            4th District

P/O Fuss and his partner, P/O Flynn, responded to a radio call "person firing a gun". On their arrival they spoke with Joseph Lagana who advised that Gregory Hearn had been on his porch firing a gun in celebration. Lagana directed P/O Fuss to plaintiff's home. Emma

DiBona also directed P/O Fuss to plaintiff's home.  P/O Fuss went onto plaintiff's porch where he met with Gregory Hearn.  Hearn denied firing a gun and stated it was only fireworks.  P/O Fuss pointed out a shell casing lying on Hearn's porch. Hearn leaped for the shell casing as P/O Fuss attempted to pick it up.  Hearn and P/O Fuss collided, fell to the porch floor and struggled briefly.  Hearn was able to grab the casing and toss it into his house.

  2.  Officer John Flynn
     c/o Philadelphia Police Department
     4th District

  P/O Flynn and his partner, P/O Fuss, responded to a radio call "person firing a gun".  On their arrival they spoke with Joseph Lagana who advised that Gregory Hearn had been on his porch firing a gun in celebration.  Lagana directed P/O Flynn to plaintiff's home.  Emma DiBona also directed P/O Flynn to plaintiff's home.  P/O Fuss went onto plaintiff's porch where he met with Gregory Hearn.  Hearn denied firing a gun and stated it was only fireworks.  P/O Fuss pointed out a shell casing lying on Hearn's porch. Hearn leaped for the shell casing as P/O Fuss attempted to pick it up.  Hearn and P/O Fuss collided, fell to the porch floor and struggled briefly.  Hearn was able to grab the casing and toss it into his house.

  3.  Joseph Lagana
     2739 South Sheridan Street
     Philadelphia, Pa

  Mr. Lagana heard gunshots outside of his home.  He went to investigate and observed smoke outside of plaintiffs' home.  Also, he observed Mr. Hearn picking up shell casings from his porch floor.  He told Mr. Hearn if was not safe to fire a gun.  Mr. Hearn responded that that was how he celebrated.
  Several minutes later a police wagon arrived.  Mr. Lagana spoke with the two officers inside.  The officers went to the Hearn's home.  P/O Fuss went on to the porch and, through the screen door, spoke with Mr. Hearn.  P/O Fuss grabbed the screen and Mr. Hearn appeared to fall through the door.  Mr. Hearn fell to the floor and began yelling.
  Mr. Lagana did not see any police officers enter the Hearn home.

  4.  William Riley
     2738 Sheridan Street
     Philadelphia, PA

  Mr. Riley observed Mr. Hearn on his porch firing a gun.
  Several minutes later a police wagon pulled up and the officers flashed their spotlight onto the Hearn's porch.  P/O Fuss approached Mr. Hearn who was standing at his screen door.  P/O Fuss touched the screen door and Mr. Hearn fell to the ground.  P/O Fuss attempted to help Mr. Hearn.
  Mr. Riley did not see any police personnel enter the Hearn home.

  5.  Emma DiBona
     2747 South Sheridan Street

Philadelphia, PA

Ms. DiBona heard gunshots coming from the area of the Hearn's porch. She and her son, Mario Chimenti, went to investigate. Shortly thereafter the police arrived. She told the officers that the gunshots came from the Hearn home. Thereafter, she went inside of her home.

6.   Mario Chimenti
     2747 South Sheridan Street
     Philadelphia, PA

Mr. Chimenti heard gunshots coming from the area of the Hearn's porch. He and his mother, Emma DiBona, went to investigate. Shortly thereafter the police arrived. P/O Fuss went onto the Hearn's porch and attempted to speak with Mr. Hearn. P/O Fuss grabbed the screen door. As soon as P/O Fuss touched the screen door, Mr. Hearn fell to the ground and started rolling around and screaming. No police personnel physically or verbally abused Mr. and/or Mrs. Hearn. No police personnel entered the Hearn's home.

7.   Sergeant Anthony Buchanico
     c/o Philadelphia Police Department
     4th District

Sgt. Buchanico responded to a radio call describing gunshots fired in the 2700 block of South Sheridan Street. When he arrived he found P/O's Fuss and Flynn on location. Also, he observed Mr. Hearn lying on his porch floor complaining of pain.
Sgt. Buchanico spoke with P/O Fuss who related that as he and Mr. Hearn reached for a shell casing on the porch floor both fell to the floor.
He did not enter the Hearn's home

8.   Officer Herbert Spellman
     c/o Philadelphia Police Department
     4th District

Officer Spellman responded to a radio call describing gunshots in the 2700 block of South Sheridan Street. Sergeant Buchanico and P/O's Fuss and Flynn were on the scene. P/O Spell man spoke with several residents of the street who related that they heard gunshots.
Officer Spellman did not enter the Hearn's home.

9.   Custodian of Records
     Philadelphia Fire Department
     5th and Spring Garden Streets
     Philadelphia, PA

Pending any stipulations, the custodian will identify and authenticate the contents of DEF-6     -- Philadelphia Fire Department Fire/Rescue Dispatch Report for No. 011540629.

        10.    Custodian of Records
                  Philadelphia Police Department
                  Radio Room
                  8th and Race Streets
                  Philadelphia, PA

Pending any stipulations, the custodian will identify and authenticate the contents of DEF-7 -- Philadelphia Police Department Radio Room Computer Aided Dispatch record for D.C.'s 01.04.23682, 23685 and 25216; and, Call No. 011479425

        11.    Captain Shawn Trush
                  c/o Philadelphia Police Department
                  25th District

Captain Trush will produce the contents of investigation interviews he obtained during his investigation of Mr. Hearn's complaint against P/O Fuss. Specifically, interviews with Mr. Hearn, Mrs. Hearn, Mr. Lagana, Mr. Riley, Ms. DiBona, Mr. Chimenti, Sgt. Buchanico, P/O Spellman, P/O Fuss and P/O Flynn.

        12.    Gregory Hearn
                  2745 South Sheridan Street
                  Philadelphia, PA

        13.    Dana Hearn
                  2745 South Sheridan Street
                  Philadelphia, PA

    **B.**    **Damages**

        1.    Custodian of Records
                Thomas Jefferson University Hospital
                11th and Spruce Streets
                Philadelphia, PA

Pending a stipulation the custodian will identify the contents of Mr. Hearn's medical records from Jefferson University Hospital.

        2.    Paul L. Liebert, M.D.
                2347 East Allegheny Avenue
                Philadelphia, PA

Dr. Liebert will testify consistent with his expert report.

## IV.    EXHIBITS

DEF-1        Police Form 75-48A for D.C. 01.04.23682

DEF-2   Philadelphia Police Department Use of Force Report for D.C. 01.04.23682

DEF-3   Police Form 75-48 for D.C. 01.04.23682

DEF-4   Patrol Log, P/O's Fuss and Flynn, 6/3/01

DEF-5   Philadelphia Police Department General No. 5027 of 6/4/01

DEF-6   Philadelphia Fire Department Fire/Rescue Dispatch Report for No. 011540629

DEF-7   Philadelphia Police Department Radio Room Computer Aided Dispatch record for D.C.'s 01.04.23682, 23685 and 25216; and, Call No. 011479425

DEF-8   Letter from Dana Hearn, 6/8/01

DEF-9   Statement Gregory Hearn to Trush, 7/26/01

DEF-10  Statement Dana Hearn to Trush, 7/26/01

DEF-11  Statement Lagana to Trush 6/27/01

DEF-12  Statement Riley to Trush, 8/14/01

DEF-13  Statement DiBona to Trush, 6/26/01

DEF-14  Statement Chimenti to Trush, 6/27/01

DEF-15  Statement Buchanico to Trush, 8/10/01

DEF-16  Statement Spellman to Trush, 8/7/01

DEF-17  Statement Flynn to Trush, 8/7/01

DEF-18  Statement Fuss to Trush, 9/12/01

DEF-19  Deposition Transcript – Gregory Hearn

DEF-20  Deposition Transcript – Dana Hearn

DEF-21  Gregory Hearn's medical records, Thomas Jefferson University Hospital

DEF-23  
a.  *Curriculum Vitae* – Paul L. Liebert, M.D.
b.  Report and *addendum* by Paul L. Liebert, M.D.

V.   **TIME FOR TRIAL**

No more than five (5) days.

## VI. SPECIAL COMMENTS

### A. Objections to plaintiffs' evidence

1. During the deposition of plaintiff Gregory Hearn's treating physician, Eric Hume, M.D., Dr. Hume offered his opinion that Mr. Hearn's injuries were consistent with his version of the events of June 3, 2001. Plaintiffs noticed Dr. Hume's deposition as that of his treating physician only. Also, in their Self-Executing Disclosures and any responses to defendants' discovery request plaintiffs did not identify Dr. Hume as an expert witness or produce an expert report. Also, plaintiffs did not comply with the instructions in the Scheduling Order, at paragraph 4, relating to the disclosure of expert witnesses on liability/damages. Finally, plaintiffs did not comply with the instructions in F.R.Civ.P. Rule 26(a)(2) regarding disclosure of expert testimony.

2. Defendants anticipate that at the trial of this matter plaintiffs will attempt to introduce evidence of defendant Police Officers Fuss and Flynn's alleged prior bad acts in the form of Philadelphia Police Department Internal Affair's Division histories and investigations; and, Departmental Board of Inquiry actions. Under Federal Rule of Evidence Rule 404(b) evidence of other wrongs or acts, although not admissible to prove the character of a person are admissible to prove a Monell claim against a municipality. See Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996). In this matter Police Officer Fuss and Flynn's employer, the City of Philadelphia, is not a defendant. Consequently there is no Monell claim and any evidence of Police Officer Fuss and Flynn's alleged prior bad acts are irrelevant.

### B. Plaintiff Gregory Hearn's claims are cognizable under the Fourteenth Amendment, only.

The first step in any § 1983 analysis is to pinpoint the specific constitutional right, which was allegedly violated. Graham v. Conner, 490 U.S. 386, 394 (1989). The validity of the claim must then be judged by reference to the specific constitutional standard that governs that right.

Graham, 490 U.S. at 394. In order to state a claim for excessive force under the Fourth Amendment, a seizure or arrest must have occurred. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.' " Graham, at 395 n. 10, citing Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968) and Brower v. County of Inyo, 489 U.S. 593, 596 (1989). According to United States v. Mendenhall, 446 U.S. 544, 554 (1980), "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." While such a seizure requires a show of authority objectively sufficient to convince the reasonable person he is not free to leave, it also requires that the suspect actually submit to the show of authority." United States v. Coggins, 986 F.2d 651, 653 (3d Cir .1993). In this matter, Mr. Hearn was not "seized". Consequently, Officer Fuss actions should be analyzed under the Fourteenth Amendment substantive due process approach. Accordingly, in order to for the Mr. Hearn to succeed under the Fourteenth Amendment he must set forth affirmative evidence that the conduct of each individual defendant was "conscience shocking." County of Sacramento v. Lewis, 523 U.S. 833 (1998).

                                            **CITY OF PHILADELPHIA - LAW DEPARTMENT**
                                            **NELSON A. DIAZ**
                                            **City Solicitor**

By: _____
      **EDWARD D. CHEW, JR.**
      Senior Attorney
      1515 Arch Street - 14th Floor
      Philadelphia, PA 19102-1595
      (215) 683-5420
      *fax* (215) 683-5397
      *e-mail* edward.chew@phila.gov

      Attorney for the Municipal Defendant(s)